# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

STEVEN R. RUTHERFORD,
ELLISON AND SONS TRUCKING CO. LLC,
W.E. HICKS, INC.,
BRENT CRAWFORD,
JASON B. SULLIVAN,
DIXCEE L. MILLSAP,
FRANKIE MITCHELL,
CARL RITTENHOUSE
AND
SAMUEL ELY,
ON BEHALF OF                                        )
THEMSELVES AND
ALL OTHER PERSONS,                                  )
CORPORATIONS AND OTHER
ENTITIES                                            )
WHO PURCHASED GASOLINE FROM                         )
DEFENDANTS IN THE
STATE OF GEORIGA                                    )
                                                    )
Plaintiffs,                                         )
                                                    )
                                                    )
     vs.                                            )   Case No:
                                                    )
                                                    )
MURPHY OIL USA, INC.;                               )
THE PANTRY, INC.;
QUIKTRIP CORP.;
PILOT TRAVEL CENTERS L.L.C;
PETRO STOPPING CENTERS, LP;
MARATHON OIL COMPANY;
LOVE'S TRAVEL STOPS
& COUNTRY STORES, INC.;
THE CIRCLE K CORPORATION;
ALIMENTATION COUCHE-TARD                            )
                                                    )
                                                    )   **JURY TRIAL DEMANDED**
                                                    )
Defendants.                                         )

**FILED IN CLERK'S OFFICE**
U.S.D.C. Rome

JUN - 5 2007

JAMES N. HATTEN, Clerk
By:
         Deputy Clerk

07-CV- 113 -HLM

## CLASS ACTION COMPLAINT

Plaintiffs, individually and on behalf of the Class of persons who purchased gasoline and diesel fuel in the State of Georgia from Defendants, state as follows.

## INTRODUCTION TO DEFENDANTS' WINDFALL AT ISSUE

1.    The Defendants have collected millions of dollars in purported fuel "taxes" from the Class which moneys have not been remitted to federal, state, and local governments. This action seeks restitution and remedies on behalf of the Class of consumers who have purchased fuel at gas stations owned and operated by Defendants in the State of Georgia.

2.    Warmer gasoline has greater volume. Consequently, with warmer gas sold at the pump, Defendants collect more in taxes from consumers based on the expanded volume of the gas. Instead of remitting such "taxes" to federal, state, and local governments, the Defendants only remit taxes based on the volume of gasoline as measured at 60 degrees Fahrenheit. Consequently, the Defendants have collected from the Class millions of dollars more in purported "taxes" than are actually due and remitted to federal, state, and local governments.

2

## THE PARTIES

3. Plaintiff Steven R. Rutherford is a resident of Whitfield County with address of 81 Clark Road, Tunnel Hill, Georgia 30755.

4. Plaintiff Jason B. Sullivan is a resident of Whitfield County with address of 172 Robins Flight, Tunnel Hill, Georgia 30755.

5. Plaintiff Dixcee L. Millsap is a resident of Whitfield County with address of 2995 Hurricane Road, Rocky Face, Georgia 30740.

6. Plaintiff Samuel Ely is a resident of Floyd County with address of 21 Bent Oak Trail, Rome Georgia 30165.

7. Plaintiff Carl Rittenhouse is a resident of Murray County with address of 1965 Highway 52, Chatsworth Georgia.

8. Plaintiff Frankie Mitchell is a resident of Walker County with address of 149 Lenda Lane, Chickamauga Georgia 30707.

9. Plaintiff Brent Crawford is a resident of County with address of 57 Marlene Drive, Rome Georgia 30165.

10. Plaintiff Ellison and Sons Trucking Company LLC is a Georgia corporation which operates commercial trucks and has its principal place of business in Rome, Georgia.

11.  Plaintiff W.E. Hicks, Inc. is a Georgia corporation with its principal place of business in Rome, Georgia.

12.  Plaintiffs have purchased fuel and paid purported federal, state, and local fuel "taxes" at retail stations owned and operated by Defendants within the Rome Division of this District.

13.  Defendant Murphy Oil USA, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in El Dorado, Arkansas. Murphy Oil USA, Inc. operates hundreds of gas stations in Wal-Mart store parking areas throughout the Southeast and Upper Midwest regions of the United States, including gas stations within the Rome Division of this District.   Murphy Oil may be served with the Summons and Complaint through its registered agent, Corporation Process Company, 180 Cherokee Street NE Marietta Georgia 30060.

14.  Defendant The Pantry, Inc. is one of the largest convenience store operators in the Southeastern United States, with over 1400 stores in 11 states, including gas retail stores within this District.  The Pantry, Inc. is incorporated under the laws of Delaware and has its principal place of business in Sanford, North Carolina.  The Pantry

may be served with the Summons and Complaint through its registered agent, CT Corporations Systems, 1201 Peachtree Street Atlanta Georgia 30361.

15. Defendant QuikTrip Corp. is a corporation organized and existing under the laws of the State of Oklahoma. QuikTrip is a privately held company with its principal place of business in Tulsa, Oklahoma. QuikTrip is a chain of convenience stores primarily found in the Midwestern and Southern United States. On information and belief, Quiktrip owns and operates approximately 108 retail gas stores in the State of Georgia, including stores within the Rome Division of this District. At all times relevant to this Complaint, QuikTrip was engaged in the sale of motor fuel in the State of Georgia and in this District. Quiktrip may be served with the Summons and Complaint through its registered agent, Stuart C. Sullivan, 4705 S. 129th E. Ave. Tulsa Oklahoma 74138 or Corporation Process Company, 180 Cherokee Street NE Marietta Georgia 30060.

16. Defendant Pilot Travel Centers L.L.C. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Knoxville, Tennessee. Pilot Travel

Centers L.L.C. is also a subsidiary of Marathon Oil Corporation and also operates retail gas outlets within the Rome Division of this District. Pilot Travel may be served with the Summons and Complaint through its registered agent, CT Corporation System, 1201 Peachtree Street Atlanta Georgia 30361.

17. Defendant Marathon Oil Company is incorporated under the laws of Delaware and may be served with the Summons and Complaint through a managing agent located at its headquarters, 5555 San Felipe Road, Houston Texas 77056-2723. Marathon Oil has participated in establishing the scheme, practices, and policies at Pilot Travel Centers whereby consumers are overcharged for purported federal, state, and local fuel "taxes." Marathon Oil may be served with the Summons and Complaint through its registered agent, Corporation Process Company, 180 Cherokee Street NE Marietta Georgia 30060.

18. Defendant Love's Travel Stops & Country Stores, Inc. has its principal place of business in Oklahoma City, Oklahoma. Love's Travel Stops & Country Stores is incorporated under the laws of Oklahoma. Love's Travel Stops & Country Stores includes more than 180 retail gas facilities, including stores located in the Rome

6

division of this District. Love's Travel Stops & Country Stores may be served with the Summons and Complaint through its registered agent, CT Corporation System, 2700 Lake Cook Road, Riverwoods, Illinois 60015.

19. Petro Stopping Centers, LP promotes itself as the nation's premier travel plaza chain. Petro owns and operates retail gas and diesel stations across the United States, including locations within the Rome division of this District. Petro's was established under the laws of Delaware and has its principal place of business is located in El Paso, Texas and its registered agent is Capitol Corporate Services, Inc., 3761 Venture Drive Suite 260, Duluth Georgia 30096.

20. Defendant The Circle K Corporation is the second largest convenience store operator in the United States, including stores located in the Rome division of this District. Defendant The Circle K Corporation is incorporated under the laws of Delaware, has its principal place of business in Phoenix, Arizona, and may be served through its registered agent CT Corporation System, 1201 Peachtree Street Atlanta Georgia 30361.

7

21. Defendant Alimentation Couche-Tard is a Canadian corporation which purchased Circle K in 2003, owns the Circle K trademark, and participates in operating Circle K stores throughout the United States, including the State of Georgia.   Defendant Alimentation Couche-Tard has its principal place of business in Quebec, Canada and may be served through a managing officer located at its company headquarters at 1600 St. Martin Blvd. East Tower B Suite 200 Laval Quebec Canada A5 00000 4506626632. Montreal. Defendant Alimentaion Couche-Tard has participated in establishing the scheme, practices, and policies at Circle K convenience stores whereby consumers are overcharged for purported federal, state, and local fuel "taxes."

## JURISDICTION AND VENUE

22. Defendants sell gasoline or diesel fuel (sometimes referred to collectively as "fuel") in the State of Georgia and within counties which comprise the Rome Division of this District.

23. Defendants conduct business throughout the State of Georgia, including business within the Rome Division of this District.

24. Plaintiffs purchased fuel from and paid purported federal, state, and local "taxes" on such fuel sales to Defendants at retail fuel

8

stations located within the counties which form the Rome Division of this District.

25. All Defendants regularly transact business within this State and within the Rome Division of this District. The claims asserted in this Complaint arise from their business conducted within this State, including the Rome Division of this District. Defendants are subject to the jurisdiction of this Court.

26. This Court possesses subject matter jurisdiction over the claims asserted in this Complaint under 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

27. Under Section 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, this Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and is a class action in which . . . any member of a class of plaintiffs is a citizen of a state different from any defendant." Such is the case here. The amount in controversy exceeds the sum of $5,000,000.00 (five-million dollars) exclusive of interest and costs. There are

9

thousands of members of the Class who are citizens of a state different from Defendants in this action.

28.   Venue is proper in this Court pursuant to 28 U.S.C. §1391.

### FUEL TEMPERATURES AND VOLUME PHYSICS

29.   Motor fuels are petroleum distillate liquids and their volume (i.e., the amount of space they occupy) expands and contracts as a result of their temperatures. As the temperature of motor fuel increases, the fuel expands because its molecules move further apart, making the fuel less dense. The same quantity of motor fuel at higher temperatures takes up greater space or greater volume.

30.   Although fuel expands as it gets hotter, the amount of energy stays the same.

31.   At 60 degrees Fahrenheit, a 231-cubic-inch gallon of fuel delivers a certain amount of energy. At 90 degrees, however, the same gallon of fuel expands to approximately 235.7817 cubic inches. Because consumers are still buying 231-cubic inch gallons, hot fuel forces them to spend more money to obtain the same amount of energy.

32.   With average annual temperature rising and with population growth in warmer states like Georgia, more and more people like

the Plaintiffs are unknowingly buying hot fuel from Defendants and unknowingly paying "taxes" on the expanded volume of fuel, despite the fact that the Defendants only remit federal, state, and local taxes calculated based on the reduced volume of fuel at 60 degrees Fahrenheit or cooler.

## TEMPERATURE OF GASOLINE SOLD BY DEFENDANTS IN THE STATE OF GEORGIA

33.    In Georgia the Defendants store their fuel in doubled-walled storage tanks which create a thermal effect. The Defendants operate stations in Georgia with multiple hoses and sell fuel in such significant daily volumes that the fuel in underground storage tanks turns over long before it has time to cool to ground temperature.

34.    Data gathered by the National Institute of Standards and Technology from storage tanks at 1,000 gas retailers from all regions revealed that the average fuel temperature across the country and year-round was almost 65 degrees - 5 degrees higher than the temperature at which wholesale gas is measured to determine the amount Defendants pay in federal, state, and local fuel taxes. The average temperature of fuel sold by Defendants in

11

the State of Georgia is hotter than the reported national average of 65 degrees Fahrenheit.

## INDUSTRY STANDARDS FOR TEMPERATURE ADJUSTED FUEL TRANSACTIONS

35. For decades those who buy fuel in bulk, such as the U.S. armed forces, have known about the variable volume of fuel based on temperature and have taken steps to protect themselves with temperature-adjusted purchase agreements.

36. Temperature adjustments occur at every step in the energy pipelines operated by Defendants, except to retail consumers. The gas station pump is the only part of the motor fuel production and distribution systems operated by Defendants where temperature-based adjustments do not occur.

37. A standard "gallon" of motor fuel as defined by usage of trade in the petroleum industry is determined volumetrically with reference to temperature. Specifically, a "gallon" of motor fuel in the petroleum industry means that amount of motor fuel which occupies 231 cubic inches when its temperature is 60 degrees Fahrenheit.

38. At the retail level, Defendants advertise and sell motor fuel at a specified price per a standard unit of measure expressed in

12

"gallons" without expressly defining "gallons." Defendants also collect federal, state, and local "taxes" per gallon from the Plaintiff Class without expressly defining "gallon."

39. For years Defendants have been aware of the volume variable properties of motor fuel resulting from changes in temperature.

40. The American Petroleum Institute and the National Bureau of Standards developed a petroleum industry standard now known as ASTM-IP D 1250 which defines a standard unit of measurement for a U.S. petroleum gallon as 231 cubic inches at 60 degrees Fahrenheit.

41. The defined "gallon" thereby enabled all parties to a motor fuel transaction to measure accurately the amount of motor fuel changing hands in a transaction, notwithstanding the variations in the volume of the fuel resulting from temperature changes.

42. The industry has adopted as the standard unit of measurement of a "gallon" of petroleum product as 231 cubic inches at 60 degrees Fahrenheit in order to bring certainty and predictability to petroleum transactions.

43. That industry standard has been adopted throughout the United States petroleum industry and various government agencies,

13

including the United States Department of Treasury which requires imported petroleum products to be declared in gallons of 231 cubic inches at 60 degrees Fahrenheit; the American Petroleum Institute which has adopted the definition as the recommended industry standard, API 2540, also called D-1250; the American Society for Testing and Materials which has adopted D-1250 as the recommended industry standard; the American National Standards Institute which has adopted as the recommended industry standard, ANSI 711.83 which is D-1250; and the Federal Trade Commission which has adopted as a mandatory standard relating to packaged petroleum products the definition of a gallon of 231 cubic inches at 60 degrees Fahrenheit, 16 CFR, 500.8 (B).

44.    At modest relative costs, the Defendant gasoline retailers could retrofit pumps to reflect changes in fuel temperatures, but they have refused to do so in the interests of more profits. Defendants could also simply collect taxes from consumers in Georgia based on the actual amount of taxes due and paid to federal, state, and local governments.

14

45. Defendants have refused and failed to implement any temperature compensation equipment in the collection of so-called "taxes" from their fuel consumers in Georgia.

46. Fuel at hotter temperatures enables the Defendants to sell greater volumes of fuel, collect more money for such fuel, and collect more purported federal, state, and local "taxes" from consumers at retail fuel stations in Georgia. Defendants have knowingly maintained and sold fuels at hotter temperatures in the interest of increased and unjust profits from the collection of so-called "taxes."

47. Temperature compensation is the most equitable way to sell fuel at every stage. Yet the Defendants have refused to make any adjustments for temperature in the collection of purported "taxes" from consumers in the State of Georgia.

48. Tens of millions of dollars in purported fuel "taxes" paid by consumers in Georgia to Defendants have not been remitted to the federal, state, and local governments, but instead have been pocketed by the Defendants.

49. The Defendants have exploited the physics of temperatures, mechanics of dispensing and quirks in tax laws to minimize their

fuel taxes while collecting and keeping excessive moneys unjustly collected as "taxes" from consumers in Georgia.

## INTRODUCTION TO THE CALCULATION OF FUEL TAXES REMITTED TO FEDERAL AND GEORGIA GOVERNMENTS

50.    Federal and state fuel taxes are pre-collected at the supplier or wholesale level before the fuel ever reaches the point of purchase by the customer. Therefore, the Defendants initially pay fuel taxes to the government before the fuel is sold to the ultimate customer and then they reimburse themselves using fuel taxes collected from the customers at the point of purchase.

51.    Under federal law, the rate of tax is 18.3 cents per gallon. 26 U.S.C. § 4081 (a)(2)(A)(i). Under federal regulations for purposes of calculating the taxes owed to the federal government, "[v]olumes of taxable fuel may be measured on the basis of actual volumetric gallons or gallons adjusted to 60 degrees Fahrenheit." 26 C.F.R. § 48.4081-8.

52.    Under O.C.G.A. § 48-9-3(a) (1), an "excise tax is imposed at the rate of 7 ½ cent(s) per gallon on distributors who sell or use motor fuel within this state." All licensed motor fuel distributors or suppliers in the State of Georgia must collect such tax at the time

16

of sale (except aviation gasoline which is subject to a 1 cent per gallon excise tax).

53. Defendants are licensed fuel distributors and suppliers under Georgia law. They also operate retail fuel stations in the State of Georgia.

54. As licensed fuel distributors, Defendants must also collect and remit a prepaid State tax on all motor fuel sold to any purchaser not licensed as a Georgia distributor. *See* O.C.G.A. § 48-9-14. The prepaid State tax rate for each fuel type is based upon an indexed retail sales price converted to a cent per gallon rate. Under O.C.G.A. § 48-9-14 (b) (2)(B), the "tax shall be separately invoiced throughout the chain of distribution until it reaches the dealer who makes the retail sale."

55. The Defendants regularly pay taxes to Georgia and federal governments by calculating the amount due as if the fuel was 60 degrees Fahrenheit or cooler regardless of its actual temperature. This is known as calculating taxes on the "net gallons."

56. Defendants regularly pay pre-collected fuel taxes calculated on the actual volume dispensed when the temperature is below 60 degrees, which measures at a lesser volume of fuel than when the

17

fuel temperature is 60 degrees or above. However, when the fuel is dispensed by the Defendants at temperatures above 60 degrees, the amount of pre-collected fuel tax paid by the Defendants is calculated on an artificial volume of fuel that would exist if the fuel temperature was at 60 degrees instead of paying based on the actual greater volume. By operating in this manner, the Defendants always pay pre-collected fuel tax as though fuel was 60 degrees or cooler.

57. Defendants have charged and collected from Plaintiffs and the Class purported federal, state, and local fuel "taxes" based on the actual volume of fuel dispensed at the pump regardless of the temperature of the fuel. Thus, Plaintiffs and the Class have paid moneys as purported "taxes" to Defendants based on the "gross gallons" of fuel purchased, not the "net gallons."

58. As a result of this fuel "tax" collection scheme, the Defendants pay pre-collected taxes based on a lower volume of fuel than actually sold to customers, but collect fuel taxes on the higher volume of fuel actually sold to their customers. As such, the Defendants are reaping a windfall because customers are paying more purported

18

"taxes" to Defendants than the Defendants actually pay to the federal, state, and local governments for fuel taxes.

59. The Defendants represent that the purported "taxes" charged at the pump are being passed through to the state, local, and federal governments as fuel "taxes," when in reality Defendants are collecting more for "taxes" from customers than they are paying to the governments. This additional money collected under the guise of "tax" is instead profits for Defendants.

## CLASS ALLEGATIONS

60. Plaintiffs bring this action individually and as representatives of the Class of customers of Defendants who were charged and paid purported federal, state, and local fuel "taxes" at retail fuel stations owned or operated by Defendants in the State of Georgia for the time period of at least April 16, 2002 through the date of judgment or verdict on behalf of the Class.

61. The Class of purchasers of gasoline from Defendants who paid such purported federal, state, and local fuel "taxes" to Defendants is so large that joinder of all members is impracticable.

62. The questions of law and fact in this case are common to the Class.

19

63. The claims and defenses of the representative parties are typical of the claims or defenses of the Class.

64. The Class representatives were fairly chosen and will adequately and fairly represent the entire Class of consumers.

65. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class, or adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not a party to the adjudications or substantially impair or impede their ability to protect their interests.

66. The Defendants have generally acted or refused to act on grounds applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

67. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual

20

members, and a Class action is superior to other available means of administration.

### COUNT ONE---UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

68. Plaintiffs repeat and incorporate the allegations of Paragraphs 1 through 54 as if fully stated herein.

69. Plaintiffs and the Class conferred a monetary benefit on Defendants in an amount equal to the difference between the amount of purported federal fuel "taxes" collected from Plaintiffs and the Class and the amount of federal fuel taxes actually paid to the federal government by Defendants (hereinafter sometimes referred to as the "federal fuel tax windfall").

70. Defendants accepted and retained the federal fuel tax windfall.

71. Defendants' acceptance and retention of the federal fuel tax windfall was and is under circumstances in which Defendants were and are unjustly enriched to Plaintiffs' and the Class's detriment.

72. Plaintiffs and the Class were damaged in the amount of the federal fuel tax windfall conferred to Defendants as set forth herein.

73. Plaintiffs and the Class also conferred a monetary benefit on Defendants in an amount equal to the difference between the amount of purported Georgia state and local fuel "taxes" collected

from Plaintiffs and the Class and the amount of state and local fuel taxes actually paid by the Defendants to state and local governments (hereinafter sometimes referred to as the "Georgia state fuel tax windfall").

74. Defendants accepted and retained the Georgia state fuel tax windfall.

75. Defendants' acceptance and retention of the Georgia state fuel tax windfall was and is under circumstances in which Defendants were and are unjustly enriched to the Plaintiffs' and the Class's detriment.

76. Plaintiffs and the Class were damaged in the amount of the Georgia state fuel tax windfall conferred to Defendants as set forth herein.

77. Defendants have been unjustly enriched by the federal and state fuel "tax" windfall.

78. Defendants have received money which the Plaintiffs and the Class are entitled to recover and which the Defendants are not entitled to retain in good conscience.

79. Under the principles of equity and under the theory of unjust enrichment, Plaintiffs and the Class are entitled to restitution from

22

Defendants in the amount of the federal and state fuel "tax" windfall.

## COUNT TWO---VIOLATIONS OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

80.　Plaintiffs repeat the allegations of Paragraphs 1 through 66 as if fully stated herein.

81.　Defendants engaged in the use of deceptive and unfair practices in the sale of their fuel in that they represented that certain moneys of every actual gallon of gasoline or diesel sold to consumers were being remitted to the federal, state, and local governments as fuel "taxes" when, in fact, Defendants were and are retaining a significant portion of those moneys collected from Plaintiffs and the Class as purported "taxes."

82.　Defendants engaged in further deceptive practices in violation of the Georgia Deceptive Trade Practices Act in that they omitted and failed to provide information on the method taxes are paid by them as pre-collected fuel tax to the governments and that they are actually profiting from the so called fuel "taxes" that consumers are charged.

83.　As a result of the deceptive practices engaged in by Defendants, Plaintiffs and the Class sustained an ascertainable loss of money in

23

that they paid money to Defendants for what was represented to them to be pass through federal, state, and local fuel taxes when Defendants were and are actually keeping a portion of the money represented to be for fuel "taxes."

84. The Plaintiffs and Class suffered damages in an amount equal to the total amount of federal, state, and local fuel taxes collected by Defendants from the Plaintiffs and the Class less the amount actually remitted to federal, state, and local governments as fuel taxes.

85. Defendants knew that a significant portion of the moneys they were collecting from Plaintiffs and Class under the guise of a federal, state, and local fuel "taxes" were, in fact, not being remitted to the federal, state, and local governments, but were simply being collected as part of Defendants' general revenue.

86. Defendants engaged in deceptive, unlawful, and unfair business acts and practices. In this scheme described above, Defendants have created the likelihood of confusion with respect to the "taxes" being collected from the Plaintiffs and the Class at retail pumps.

87. By engaging in the above-described acts and practices, Defendants have committed one or more acts of conducting consumer

24

transactions in a deceptive and unlawful manner within the meaning of O.C.G.A. § 10-1-372. Specifically, Defendants violated subsection 12 of that section, which makes unlawful "any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

88. Plaintiffs individually and on behalf of the Class seek a declaratory judgment finding Defendants' business practices illegal, deceptive, and unlawful and awarding all relief allowed under Georgia law.

89. The Georgia UDTPA is expressly intended to protect "persons" from potentially confusing or deceptive trade practices. The Georgia UDTPA expressly defines "persons" as follows: "'Person' means an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." (emphasis added). Thus, Plaintiffs and the Class are "persons" "likely to be damaged" by Defendants' ongoing deceptive trade practices.

90. As provided by O.C.G.A. § 10-1-371, Plaintiffs and the Class seek an injunction against Defendants under the principles of equity.

25

Proof of monetary damage, loss of profits, or intent to deceive is not required.

91. Defendants engaged in deceptive, unlawful, and fraudulent business acts and practices, in violation of O.C.G.A. §§ 10-1-370 *et. seq.*, by collecting a windfall of moneys as so-called "taxes" which were never remitted or owed to federal, state or local governments and by creating the likelihood of confusion and misunderstanding among consumers paying such "taxes" to Defendants.

92. Plaintiffs, on behalf of the Class, seek a declaratory judgment against all Defendants finding Defendants' business practices unlawful and deceptive in violation of O.C.G.A. §§ 10-1-370 *et. seq.*

93. Such a declaratory judgment is proper under O.C.G.A. § 9-4-1 *et seq* and 28 U.SC. §2201.

94. Plaintiffs and the Class further seek all remedies authorized under the Georgia Deceptive Trade Practices Act, including attorneys' fees and costs.

## COUNT THREE---CONVERSION OF MONEYS WHICH BELONG TO THE PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS

95. Plaintiffs incorporate each of the above allegations by reference as if fully rewritten herein.

96.   Plaintiffs and the Class were and are the sole and rightful owners of the windfall of moneys collected by Defendants as purported federal, state, and local "taxes" which exceeded the actual amount of moneys remitted as fuel taxes by Defendants to federal, state, and local governments.

97.   The monies due and owing to Plaintiffs and the Class are now in the possession and under the control of Defendants.  Defendants have taken these monies for their own use and benefit, thereby permanently depriving Plaintiffs and the Class of the use and benefit of such moneys.

98.   There is clear and convincing evidence that the Defendants' actions showed willful misconduct, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences

99.   Defendants acted willfully, wantonly, with oppression, and with a conscious disregard of the rights of Plaintiffs and the Class, such that Plaintiffs request that the trier of fact award punitive damages in sufficient amounts to punish Defendants for their conduct.

100.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have, and will continue to, suffer compensatory

27

damage in an amount to be determined according to proof at the time of trial.

101. By virtue of Defendants' actions, Defendants hold a windfall of moneys as constructive trustee for the benefit of the Plaintiffs and the Class. Plaintiffs request an order that Defendants be directed to give possession of such windfall to the Plaintiffs and the Class.

## PRAYERS FOR RELIEF

102. Plaintiffs request the Court order Defendants to provide restitution to the Class and to disgorge the monies due and owing to the Plaintiffs and the Plaintiff Class.

103. On behalf of themselves and the Class, Plaintiffs request that they recover punitive damages, all penalties, interest, and reasonable and necessary attorneys' fees as authorized under governing law.

104. Plaintiffs and the Plaintiff Class request both prejudgment and post-judgment interest at the maximum rate allowed by law.

105. Plaintiffs request that the Court enjoin Defendants from further, future violations of governing laws.

106. On behalf of themselves and the Plaintiff Class, Plaintiffs request the following relief and pray for judgment in their favor against Defendants.

i.   An order certifying this case as a Class action against Defendants and appointing the named Plaintiffs and the undersigned counsel as Representatives of the Plaintiff Class;

ii.   For judgment against Defendants and in favor of Plaintiffs and the Class on all claims asserted in this Complaint;

iii.   For disgorgement and restitution plus interest due thereon at the legal rate;

vi.   For costs of suit incurred herein:

v.   For prejudgment and post-judgment interest to the extent allowed by law;

vi.   For punitive damages and penalties as allowed by law;

vii.   For declaratory judgment determining Defendants' business practices to be illegal, deceptive, and unfair;

viii.   For injunctive relief requiring Defendants' future compliance with the laws; and,

ix.   For such other and further relief as this Court may deem appropriate.

**Plaintiffs hereby demand trial by jury on all issues.**

VROON & CRONGEYER, LLP

By: _Bryan A. Vroon_
Bryan A. Vroon
Georgia Bar No. 729086

By: _John Crongeyer_
John Crongeyer
Georgia Bar No. 197267

1718 Peachtree Street, Suite 1088
Atlanta, Georgia  30309
Telephone:  (404) 607-6710
Facsimile:  (404) 607-6711

ROBERT K. FINNELL, P.C.

By: _____
      Robert K. Finnell
      GA Bar No. 261575

P.O. Box 63
One West Fourth Avenue
Suite 200
Rome, Georgia 30162-0063
(706) 235-7272


Edward D. Robertson, Jr.
MO BAR #27183
BARTIMUS, FRICKLETON, ROBERTSON &
GORNY
715 Swifts Highway
Jefferson City, Missouri 65109
573/659-4454
573/659-4460 (facsimile)
Motion for Pro Hac Admission to be filed

ATTORNEYS FOR THE PLAINTIFFS

30